## TMF Systems, Inc. v. Equibank N.A.

*Alan Frank*, for plaintiffs.

*W. Gregg Kerr* and *Alexander C. Sherrard*, for defendants.

FINKELHOR, *J.*, March 14, 1979—The above matter,[1] a class action, is before the court on the preliminary objections of both defendants to plaintiffs' complaint in equity alleging that service charges levied by defendants on checking accounts of plaintiffs are a violation of the Pennsylvania Debt Pooling Act of December 6, 1972, P.L. 1482, 18 C.P.S.A. §7312. The issue is whether the relationship of a bank and depositor establishes an implied debt pooling agreement and, in the event such implied contract exists, the constitutionality of the penal prohibition against debt pooling.

---

1. The cases were consolidated for the purposes of pre-trial motions.

Debt pooling is prohibited by the Crimes Code of December 6, 1972, P.L. 1482, sec. 1, 18 C.P.S.A. §7312, and said section states in its entirety as follows:

"§7312. Debt Pooling[2]

"(a) Offense defined.—Any person engaged in the business of debt pooling shall be guilty of a misdemeanor of the third degree.

"(b) Exceptions.—Subsection (a) of this section shall not apply to: (1) Any person who is admitted to practice before the Supreme Court of Pennsylvania or any court of common pleas of this Commonwealth or any partnership or professional corporation all of the members or shareholders of which are so admitted. (2) Better business bureaus, legal aid societies, or welfare agencies who act without compensation or profit on behalf of debtors as debt adjusters or debt poolers.

"(c) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection: 'Creditor.' A person to whom a debt or obligation is owed from another whether such is payable in installments or otherwise, 'Debtor.' A person who owes an obligation or debt to another whether such is repayable in installments or otherwise. 'Debt pooling.' The making of a contract, express or implied, with a debtor or debtors whereby the debtor agrees to *pay a sum of money periodically or otherwise to another person for the purpose of having such other person*

---

2. This statute effective June 6, 1973, is derived from two predecessor statutes prohibiting the businesses of "debt pooling" and "budget planning." 18 P.S. §§4897, 4899 (in Appendix to 18 C.P.S.A.).

distribute the same among certain specified creditors in accordance with a plan agreed upon, or to be agreed upon, and whereby such other person shall receive a consideration for any such services rendered, or to be rendered, in connection therewith." (Emphasis supplied.)

In brief, the prohibited practice in section 7312 of the present Crimes Code, and prior legislation, concerns a contract or agreement for the payment of moneys by the debtor to a third person for the payment of creditors and receipt of consideration by said third party for such services. This type of legislation in Pennsylvania and other jurisdictions dates back to the thirties and was to protect the small consumer-debtor from exploitation.

In their complaint, the two plaintiffs, TMF Systems, Inc., a corporation, and Dorothy A. Roy, an individual, allege that they are checking account customers at the two banks in question and that, under their agreement with the banks, they pay to the banks a sum of money periodically and that defendant banks pay the creditors specified by plaintiffs. For these payment services, plaintiffs further allege that they pay to defendant banks a periodic service charge of 75 cents or 85 cents per month.

As characterized by plaintiffs on page 2 of their briefs, "the customer (debtor) and bank (debt pooler) impliedly agree (the making of a contract) that when the customer (debtor) makes deposits (pays a sum of money periodically or otherwise) in the bank (other person) the money is deposited for the purpose of having such other person (the bank) distribute the same among certain specified creditors (payees named on checks drawn by the cus-

tomer) . . . and that the service charge is made for the payment of said creditors."

It is defendants' position that accepting the complaints as stated, (1) plaintiffs have failed to state sufficient facts to meet the statutory requirements; (2) enforcement of the Debt Pooling Act would be in violation of the Pennsylvania and United States Constitutions; (3) the act does not serve as the basis for a civil lawsuit; (4) an implied contract may not be reformed by an action in equity; and (5) plaintiffs' claims are limited by laches and that plaintiffs have an adequate remedy at law.

In order to consider the validity of defendants' allegations, it is necessary to examine the scope of the complaint and the applicable debt-pooling law.

It is well established that, in ruling on preliminary objections in the nature of a demurrer, the court is limited to the facts set forth in the pleadings and must accept as true all well pleaded material facts and the inferences reasonably deducible therefrom. A demurrer can only be sustained where it appears with certainty that plaintiff has failed to state a cause of action: Firing v. Kephart, 466 Pa. 560, 353 A. 2d 833 (1976).[3]

Prohibitions against debt pooling were included within the Penal Code of 1939 and found constitutional: Davis v. Safeguard Investment Co., 239 Pa. Superior Ct. 300, 361 A. 2d 893 (1976); Baldwin v. Safeguard, 10 D. & C. 3d 505 (1977), affirmed per curiam, _____ Pa. Superior Ct. _____, 393 A. 2d

---

3. While this matter reached the chancellor on preliminary objections, defendants rely in part on the written agreement between bank and depositor cited in their brief. This is properly included in answer and new matter and has not been considered by the court.

1271 (1978); Cooperman & Woods, Inc. v. Weikel, 41 D. & C. 2d 374 (1965). In Ferguson v. Skrupa, 372 U.S. 726 (1963), the United States Supreme Court ruled that a Kansas criminal statute prohibiting "debt adjusting" did not violate the Federal Constitution. Therefore, before considering other arguments raised by defendants, we will determine whether plaintiffs have alleged the necessary elements of the Pennsylvania Debt Pooling Act in their complaint.

While defendants have raised many other issues, in our judgment the crux of the matter to be considered by the court is whether plaintiffs have included within their allegations sufficient facts to establish a contract between plaintiffs and defendants for the payment of plaintiffs' debts upon the payment of a service charge.

Plaintiffs note that, in other jurisdictions[4]— notably Arkansas, Louisiana, Maryland, Montana, Tennessee and Texas—banks and other savings and loan associations are specifically exempted from the debt pooling legislation and that the Pennsylvania act only excepts attorneys, better business bureaus, legal aid societies and welfare agencies. It is plaintiffs' argument that, in the absence of specific legislation excluding banks, such institutions must be included within the dimensions of the present Crimes Code. Conceivably, in the event banks attempted to set up debt pooling arrangements with debtors, this argument might have validity.

---

4. Ark. Stat. Ann. §41-4161(b); La. Rev. Stat. Ann. §331C(2); Md. Ann. Code Art. 27, §79A(c)(2); Mont. Code Ann. §31-3-203(2); Tenn. Code Ann. §39-3415(b); Tex. Rev. Civil Stat. Ann. Art. 5069-9.03(a).

However, plaintiffs have failed to establish even the rudimentary elements of debt pooling in the depositor/bank arrangement. It is nowhere alleged in the complaint that checks drawn upon a bank account are solely for the payment of debts or that the bank has any knowledge of the purposes of a given check or the purposes of a given checking account. There is no allegation of any obligation by plaintiffs to deposit moneys with the bank nor have plaintiffs cited any facts to establish a plan of payment as required by the Crimes Code.

While it is conceivable that service charges levied by banks on the checking accounts of small depositors is a burden on such depositors, this does not ipso facto place such charges within the category of a criminal act. In fact, alternate methods of maintaining checking privileges have recently been adopted by most banks. It is a basic principle of statutory construction that criminal legislation must be strictly construed: Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. § 1928; Com. v. Cunningham, 248 Pa. Superior Ct. 219, 375 A. 2d 66 (1977).

To adopt plaintiffs' position would, in effect, make suspect any payment of debt by any third party—regardless of the circumstances—and would impede, if not halt, commercial transactions in this Commonwealth.

Because it is so apparent that plaintiffs have failed to state a cause of action and that amendments cannot cure the defective theory of the complaint but can only add to the cost of litigation, defendants' preliminary objections in the nature of a demurrer are sustained.

An appropriate order is attached hereto.

## ORDER

And now, March 14, 1979, upon the preliminary objections of defendants Equibank and Pittsburgh National Bank, and after full consideration of the briefs and arguments of counsel, it is hereby ordered, adjudged and decreed that said preliminary objections in the nature of a demurrer are sustained and judgment shall be entered in favor of defendants.