## Lackey v. Sacoolas, Appellant.

Argued April 19, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*James P. Coho*, with him *Merrill L. Hassel*, for appellants.

*Robert L. Pfannebecker*, with him *Geisenberger, Pfannebecker & Geisenberger*, for appellees.

Opinion by Mr. Justice Musmanno, June 7, 1963:

William T. Lackey and Blanch R. Lackey, his wife, members of the colored race, brought an action in equity to restrain Nicholas Sacoolas, doing business as Maple Grove Amusement Park and Swimming Pool, in Lancaster County, from denying to the Lackeys and other persons the privileges of the Maple Grove Swimming Pool because of race, creed or color, in violation of the Act of June 24, 1939, P. L. 872, §654 (18 P.S.

§4654). At the hearing on the motion for a preliminary injunction, it developed that an organization known as the Maple Grove Recreation Association was involved in the matter and the plaintiffs moved to amend their complaint to include that organization as an additional defendant. The motion was allowed and, eventually, after a trial on the merits, the chancellor entered a decree enjoining Sacoolas and the Maple Grove Recreation Association from withholding from the plaintiffs "and all other persons similarly situated, the full and equal accommodations, advantages, facilities and privileges of the Maple Grove swimming pool and related facilities on account of the race, creed or color of such persons."

The defendants appealed. There can be no doubt that the discrimination specifically prohibited by the Act of 1939, supra, was practised at the Maple Grove Swimming Pool. When the plaintiffs appeared on June 11, 1960, at the swimming pool, ostensibly open to the entire public, they were informed that they could only enjoy the facilities of the establishment after having been accepted as members of the Maple Grove Recreation Association. To that end they were required to make up applications which they duly executed and which in a matter of days were rejected. White persons, on the other hand, entered the pool without any such preliminaries. They paid a 50-cent fee for membership, a membership card was at once forthcoming and they could enter the pool forthwith. The chancellor found, and the evidence supports the finding, that no white person's perfunctory application for membership was ever rejected and that no formal application by a negro was ever approved.

The appellant Sacoolas argues that he has no legal responsibility in this entire transaction because he is merely the owner of the property which he leased to the Maple Grove Recreation Association, a nonprofit

organization, duly chartered under the laws of the Commonwealth. For a disinterested lessor, Sacoolas is quite busy handling the affairs of the lessee. He maintains and operates the swimming pool, supplies the necessary personnel and covers the business with protective insurance. For his services he receives all the money collected in admissions.

According to the lease Sacoolas was paid a rental of $1 a year (for the swimming season), by the Association. This meager payment, perhaps more than anything else, reveals Sacoolas' full control over the business. Aside from philanthropy or charity, which has nowhere shown its white robe in this case, it is difficult to believe that anyone would dispose of a paying swimming pool business for the total amount of one dollar a year.

The flashing of a lease cannot ipso facto wipe out obvious facts, conspicuous implications and manifest results. The lease in this case was obviously a smoke screen behind which Sacoolas sought to evade the effect of the Act of 1939. Sacoolas was catering to the public but, in the enveloping vapors of subterfuge, thought to present himself as a private club. With the slightest gust of inquiry, the smoke parted and revealed the enterprise to be what it was, a stark circumvention of the prohibitions against racial discrimination, so clearly spelled out by the Legislature.

At the final hearing on the injunction, the testimony presented at the preliminary hearing was incorporated into the record as part of the evidence to be considered by the court. The defendants objected to this inclusion. Although the chancellor overruled the objection, he informed the defendants that they could call for cross-examination the witnesses who had testified at the preliminary hearing and were then physically present in the courtroom. The defendants de-

clined to cross-examine them and they declined to present evidence of their own.

The appellants now argue that "a court may not consider the hearing relating to a preliminary injunction as a final hearing on the merits and as the basis for final decree." That is not what the court did. It conducted a final hearing and accepted for study, review, and deliberation evidence which had been presented at the preliminary hearing. The only purpose of this procedure was to avoid the useless monotony of hearing once again what had been heard and which was reduced into permanent form by a stenographic transcript. If the defendants believed the evidence presented at the preliminary hearing was untruthful or unreliable, they could have cross-examined the plaintiffs' witnesses and the door was open for them to present rebutting testimony. They themselves voluntarily closed that door. Counsel for the Association declared at the final hearing: ". . . on behalf of the Maple Grove Recreation Association I do not wish to indulge in any further cross-examination since I feel the record is complete as it stands and the witnesses who had previously testified have not in any way indicted the Maple Grove Recreation Association, and we will therefore not participate either in cross-examination or presentation of evidence."

With this voluntary acceptance of what had been presented, because he believed it was not damaging to the Association, counsel may not now deny to the court the right to consider what was an integral part of the record. Nor may counsel argue that it was unfamiliar with that record. The notes of the testimony of the preliminary hearing were filed as of December 20, 1960. The final hearing occurred on October 23, 1961, thus allowing counsel ten months to peruse the transcript, question it and refute anything it contained if refutation was called for. Counsel weighed the evidence and

found it light. The court placed it on the scales and found it heavy. The lawyers pitted their judgment in avoirdupois against that of the judge and are bound by what the judge read on the measuring scale.

In support of their argument on this phase of the case, appellants cite the case of *Herman v. Dixon,* 393 Pa. 33. Aside from the fact that *Herman* had to do with a preliminary injunction, it has no relevance to the situation at bar. In *Herman* this Court held that the preliminary injunction there entered was improvidently granted because the evidence did not establish preliminary relief was imperative to avoid any supposed irreparable harm.

The other case cited by the appellants (*Seidel v. Goldsmith,* 97 Pa. Superior Ct. 164) in asserted support of their position actually upholds the contrary position. In that case the Superior Court said: "Our practice in this respect [i.e., the Court's refusal to permit a case to be decided on the merits solely on the basis of evidence taken at a hearing on the application for a preliminary injunction], is not affected by the statement of appellant's counsel, on the oral argument, that he did not contemplate the taking of future testimony in the case. We do not doubt the good faith of the statement but it cannot transform the preliminary hearing into a final one. If no further evidence is desired by either party, a final hearing of the suit can be speedily obtained and the case disposed of on bill, answer and the evidence already taken . . ." (Emphasis supplied).

Neither case law nor reason can support the proposition that testimony taken at preliminary hearing may not be *considered* by the court at the final hearing, especially when the adverse party is allowed full opportunity to present additional direct testimony and to subject the witnesses of the preliminary hearing to cross-examination.

The appellants make much of the fact that the court below said: "Without any controlling decision to guide us, we could conscientiously decide this case either way on the facts."

This was indeed a strange statement for the court to make. Justice escapes through an open window when a controverted case is determined by the tossing of a coin. No decree should be founded on a haphazard head-or-tail determination. Obviously, if a court is in doubt, it is its duty to declare for the defendant because the plaintiff has the burden of proving his case by a preponderance of the evidence. An evenly balanced seesaw can never catapult an alleged injured person's rights into the region of remedial fulfillment.

However, after making the statement above quoted, the court corrected itself and determinedly concluded: "We firmly believe that all men are created equal and because the Legislature has clearly declared that discrimination because of race, creed or color is against public policy, we have come to the conclusion, after long and careful deliberation that the Maple Grove swimming pool is a public accommodation and the plaintiffs' rights under the Act of 1939 have been violated . . ."

We are satisfied that the evidence fully supports the court's findings of facts, conclusions of law, and decree.

In the court below the appellants contended that since the defendants were in effect being charged with a violation of The Penal Code (Act of 1939, infra), the plaintiffs had no right to apply to equity for an enforcement of their rights under that Act. The appellants abandoned this feature of their defense when the case was appealed to our Court. However, for the sake of completeness in disposing of the litigation, reference is made to *Everett v. Harron,* 380 Pa. 123,

where this Court in discussing the same question, said: "Does the statute confer upon persons against whom illegal discrimination is practiced a right of action to redress the grievance thereby suffered? The answer to this question must undoubtedly be in the affirmative. It will be noted that section 654 begins by stating that 'All persons within. the jurisdiction . of this Commonwealth shall be entitled to the full and equal accommodations . . . of. any places of public accommodation, resort or amusement, . . .'. If, therefore, they are. 'entitled' to such privileges they are likewise entitled to enforce them, since wherever there is a right there is a remedy. . . . it is true that it has frequently been stated that equity will not act *merely* to enjoin the commission of a crime, and that a bill in equity *having for its sole purpose* an injunction against crime does not lie: . . . This does not mean, however, that, even though there be other reasons for invoking the jurisdiction of equity, no injunctive relief can be granted if the act against which it is directed is subject to a criminal penalty. . . . the cases are legion both in our own State and elsewhere where injunctive relief has been granted although the commission of an act which is subject to a criminal penalty is thereby being enjoined: . . ."

Decree affirmed, defendants to pay costs.

Mr. Justice BENJAMIN R. JONES concurs in the result.