## Safeguard Investment Company *v.* Davis et ux., Appellants.

Argued April 14, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John G. Arch*, for appellants.

*M. David Turets*, for appellee.

OPINION BY VAN DER VOORT, J., March 29, 1976:

This is an appeal from the denial of two Petitions to Strike or Open Judgments. The appellants, a husband and wife, allege that the lower court abused its discretion in denying their Petitions, and further, misconstrued the Debt Pooling Act (Act of December 6, 1972, P.L. 1482, No. 334, §1, effective June 6, 1973, 18 Pa.C.S. §7312).

In the consideration of any appeal from the lower court's denial of a Petition to Open Judgment, it is well established that we must not reverse the lower court's action unless a clear abuse of discretion is apparent or an error of law was committed. *Alliance Discount Corp. v. Shaw*, 195 Pa. Superior Ct. 601, 171 A.2d 548 (1961). A party that moves to open a confessed judgment, such as those involved in the instant appeal, must act promptly and aver a meritorious defense. *Wenger v. Ziegler*, 424 Pa. 268, 226 A.2d 653 (1967). No issue is raised in our Court, nor was any voiced by the appellee or the lower court regarding the timeliness of appellants' Petitions to Open Judgment. Thus, we must only determine whether the lower court clearly abused its discretion or committed an error of law in the evaluation of whether appellants raised a meritorious defense.

Appellants filed petitions to open (or strike) judgment relating to two judgments confessed against them by appellees. Rules to Show Cause why the judgments should not be opened or stricken were sought. After Answers were filed the lower court directed appellants to proceed in accordance with Pennsylvania Rules of Civil Procedure 209 or 2959, and utilize discovery procedure, or be bound by the averments contained in the Answers. See *Harr v. Bernheimer*, 322 Pa. 412, 185 A. 857 (1936). Appellants took no further action so the record before the lower court and our court must necessarily rest upon the factual averments of the Answer, together with the undenied averments found in the appellants' petitions.

The record therefore indicates that on December 12, 1968, appellants executed bonds and mortgages on real

estate evidencing indebtedness in the penal sums of six thousand ($6,000.00) dollars and fourteen thousand ($14,000.00) dollars, based upon loans in the actual amounts of three thousand ($3,000.00) dollars and seven thousand ($7,000.00) dollars. These loans were secured to consolidate and pay off debts of the appellants which totaled five thousand, seven hundred and six and four one-hundredths ($5,706.04) dollars. At the time the loan transaction was completed, appellants were provided with "settlement sheets" indicating the terms and conditions of the loans and various expenditures involved with the loans. These sheets indicate that the appellants agreed to make monthly payments of a stated amount to satisfy the two separate loans. Each loan bore interest at the rate of six (6%) percent per annum, with a "one (1%) percent premium payment." The mortgages provided for fire insurance premiums and taxes to be paid from the monthly payments. Other normally included items such as recording costs and attorneys' fees are evident.

In addition to the above-described costs and fees, the "settlement sheet" and mortgage show that appellants were required as a condition of the loan, to pay the Commonwealth Acceptance Corporation a sum of one thousand, six hundred ninety-four and six one-hundredths ($1,694.06) dollars as a so-called "financial consultant fee," on the first mortgage of seven thousand ($7,000.00) dollars. Moreover, appellants were required to pay to the appellee, Safeguard Investment Company, a fee of nine hundred ($900.00) dollars on the same loan and an additional fee of eight hundred three and forty one-hundredths ($803.40) dollars on the second mortgage of three thousand ($3,000.00) dollars. No reasons are specified on the loan documents for these payments of one thousand, seven hundred and three and forty one-hundredths ($1,703.40) dollars to Safeguard.

Thus, to summarize, the record shows that the appellants, in an attempt to consolidate debts of five thousand, seven hundred ($5,700.00) dollars, were re-

quired to pay, in *addition to normal interest and costs* associated with a loan, approximately one thousand, seven hundred ($1,700.00) dollars as a "financial consultant fee" and another one thousand, seven hundred ($1,700.00) dollars for other unspecified services. The appellants attempted to open judgments on a theory that such extra payments were violative of the "Debt Pooling Act" and thus presented a meritorious defense. The lower court reached the legal conclusion that the transaction involved was a standard and legal debt consolidation loan transaction and thereby denied the appellants' attempt to open judgments. We find that we cannot agree with the conclusions of the lower court.

The statute prohibiting debt pooling, in effect at the time of the instant loan transaction in 1968, was the Act of June 24, 1939, P.L. 872, §899, 18 P.S. §4899 (as amended by the Act of August 8, 1961, P.L. 970, §1),[1] which defined debt pooling as:

"... the making of a contract, express or implied, with a debtor or debtors whereby the debtor agrees to pay a sum of money periodically or otherwise to another person for the purpose of having such other person distribute the same among certain specified creditors in accordance with a plan agreed upon, or to be agreed upon, and whereby such other person shall receive a consideration for any such services rendered, or to be rendered, in connection therewith."

The Act made debt pooling illegal and provided certain criminal penalties; it also provided certain excluded categories and professions which are not pertinent here. From our reading of the Act, and considerations of the record before us, it clearly appears that the transaction involved in the instant case contains provisions violative of the Debt Pooling Act.

---

1. The present prohibitions against debt pooling may be found in the Act of December 6, 1972, P.L. 1482, No. 334, §1, eff. June 6, 1973, 18 Pa.C.S. §7312.

While there have been no appellate court decisions construing the Debt Pooling Act, we cite with approval the reasoning and decision of the Allegheny County Court of Common Pleas in *Cooperman and Woods, Inc. v. Weikel,* 41 D. & C. 2d 374 (1965), wherein a virtually identical scheme was held to be violative of the. Act. While the lower court in the instant case found the transaction to be a normal consolidation of debts, frequent in our modern credit economy, we cannot accept this view or legal conclusion. The record shows clearly that the appellees, in addition to the normal interest and costs accorded to a lender in the standard debt consolidation transaction, charged the appellants with exorbitant fees for so-called "financial consultation" and other undisclosed services. Procedurally, we need not reach the conclusion that conduct violative of the Debt Pooling Act has occurred such as to provide appellants with a complete defense to appellee's total claims on the underlying debt. Such determinations will be within the purview of the lower court upon remand. We merely hold that the record before our court on the Petition and Answer requires that judgment be opened to allow appellants to present their · seemingly meritorious defense.

The appellee contended before the lower court, and on this appeal, that the Petitions to Open should have been dismissed because the affidavit on one of the Petitions was signed by appellants' counsel rather than by appellants themselves.[2] The lower court did not address this issue in its Opinion. While this affidavit does not technically comply with Pennsylvania Rules of Civil Procedure 1024 (even though signing by a party's attorney is permitted in some·circumstances), and is not

---

2. As noted earlier, appellee confessed judgment on two separate bonds and mortgages even though both debts arose out of the same loan transaction. One of Appellants' Petitions to Open Judgment was accompanied by a proper affidavit, while the other featured the above-discussed affidavit of counsel.

to be condoned we deem this error to be inconsequential, and certainly not prejudicial in the instant case. The second Petition to Open Judgment is a virtual twin of the first—it is supported by a proper affidavit. As the Supreme Court stated in *West Penn Sand & Gravel Company v. Shippingport Sand Company*, 367 Pa. 218, 223, 80 A.2d 84, 86-87 (1951): "...courts should not be astute in enforcing technicalities to defeat apparently meritorious claims; if the defendant has any real or substantive defense to the confessed judgment the way lies open to it to present it."

The Order of the Court of Common Pleas is reversed and the cause is remanded to the Court of Common Pleas for proceedings consistent herewith.