ELIZABETH TIERNEY, an Infant, by Her Mother, ELIZABETH M. TIERNEY, Respondent, v. EDWARD FLOWER, Appellant, et al., Respondents.

Second Department, July 7, 1969.

*Koffler, Flower & Plotka* (*Edward Flower* of counsel), for appellant.

*Bernard T. Callan* for respondent.

RABIN, J. The underlying problem on this appeal is whether the order under review unwarrantedly interferes with the privileged communication existing between the appellant-attorney and his clients.

In September, 1967, the appellant was retained by clients desirous of adopting a child expected soon to be born to the petitioner. Without revealing the identity of these clients, the appellant negotiated with the petitioner, a legal infant, and her father with respect to the expenses of the petitioner's imminent confinement and the adoption and worked out terms mutually satisfactory to the petitioner and her father.

On October 26, 1967, the petitioner's child was born. On October 29, 1967, on the petitioner's discharge from the hospital where her child was born, she delivered her child over to the clients, without ascertaining their identity and in pursuance of prior arrangements to hand the child over to a man and woman " with a beige car in a parking lot ", in the hospital parking lot. At that time, the clients gave a sum of money to the appellant which he remitted to the petitioner's father in satisfaction of expenses he had paid; and they also paid a further sum of money to the appellant on account of his counsel fee for processing the adoption proceedings.

Thereafter, the appellant prepared a petition for adoption which was executed by his clients. In connection therewith, he also prepared a consent and affidavit, for the petitioner's signature, which, on November 10, 1967, he took to the petitioner's home. There he conferred with the petitioner in the presence of both her parents. The consent and affidavit did not mention on their face the names of the people, the appellant's clients, who were adopting the child; and the petitioner did not then and there ask for their identity.

According to the petitioner, at the conference held on November 10, 1967 the appellant told the petitioner and her parents that he represented only the prospective adopting parents. He informed them, however, that the adoption would become final in a period of six months or more. He also explained that even

though the petitioner executed the consent, she would later have to appear before a Judge of the adoption court to reaffirm such consent and that, without such reaffirmance, the adoption could not be finalized. After this discussion, the petitioner executed the consent and affidavit brought to her home by the appellant.

Following the November 10, 1967 conference, the appellant had no further contact with the petitioner until sometime in April, 1968, when he forwarded to her an additional affidavit. In the interim, and in early 1968, the appellant received an inquiry from an attorney who requested certain information about the adoption, which was given; and the appellant had a number of telephone conversations with the petitioner, but no one informed him that she had changed her mind about the adoption. In October, 1968, the petitioner executed and returned to the appellant the additional affidavit.

In the month of December, 1968, the petitioner engaged an attorney who advised the appellant that she wanted her child back. The appellant then conferred with his clients and they instructed him to decline the petitioner's request and to refuse to disclose their identity and the whereabouts of the petitioner's child. There followed the instant proceeding, the purpose of which was stated to be the ascertainment of the identity of the '' unknown people '' who have custody of the petitioner's child.

The appellant was designated herein by name as a party respondent, as the only person with knowledge of the identity of the child's custodians, and his clients were named as '' John Doe '' and '' Mary Doe, his wife ''. Process was served only upon the appellant; his clients were not served and they did not authorize the appellant to appear and defend on their behalf. In fact, at the hearing the appellant testified that his clients had specifically instructed him not to appear and defend on their behalf and not to reveal their identity. He contended also that disclosure of his clients' identity would result in a breach of the privileged communication arising as a result of his retainer by the clients for the purposes of perfecting an adoption. He acknowledged that '' the people '' by whom he had been retained had custody of the petitioner's child, but said he resisted disclosure of their identity so as to shield them from the petitioner's obvious intention to embroil them in further litigation. He declined also to state whether he had processed the papers for adoption or to name the court in which such papers might have been submitted, claiming that such a response was also of privileged nature since adoption papers were generally sealed so as not to become a matter of public record. So far as appears, the adoption proceeding has not been moved forward.

At the hearing, there was no denial made of the petitioner's allegations that her right to have her child returned is being frustrated because she does not know " the people " who retain custody of her child, that the appellant is the only person who does know, that she now refuses to consent further to adoption, and that she wants her child returned to her.

On the face of this record, the learned Special Term Justice held that no legitimate reason appeared for upholding the claim of confidential relationship between the appellant and his clients, that the appellant must disclose the names and addresses of his clients, and that the lack of such disclosure would serve only to impair the Supreme Court's processes and concern for the welfare of the child in issue. He also held that the welfare of the child dictated that there should be an inquiry about whether the present custody was in the child's best interests, but that such inquiry could not proceed without identification of the child's custodians. He held further that an attorney might properly shield the names of his clients only where disclosure might subject them to illegal reprisals, but not where, as at bar, illegal reprisal was not involved.

In our opinion, there is no competent reason why the Supreme Court should uphold the claim of confidential relationship between the appellant and his clients to the point of sealing their identity where the safe and proper custody of a child is involved, particularly where, as at bar, the infant is out of the custody of his mother and is not lodged in the custody of persons who have any legal authorization for their assumption of control over the infant. The Supreme Court's overriding concern with the welfare of the infant as a ward of the court overbalances any interest of technical claim on the appellant's part with respect to the confidential relationship between him and his clients.

We reject the appellant's contention that the cases in which disclosure of the names and addresses of clients was required are restricted to situations in which the attorney-client relationship exists in the very litigation where disclosure is sought and that such case law has no application at bar where the attorney is not representing any client but appears and contests as a principal. The disclosure of the client's identity is required where, as at bar, injury would result to the proper administration of justice " immeasurably greater than the benefit that would inure to the relation of attorney and client " (*People ex rel. Vogelstein* v. *Warden of County Jail*, 150 Misc. 714, 720, affd. 242 App. Div. 611). The seal of secrecy between attorney and client is to be preserved " in the aid of a public purpose

to expose wrongdoing and not, as in the *Vogelstein* case, to conceal wrongdoing '' (*Matter of Kaplan [Blumenfeld]*, 8 N Y 2d 214, 218). *Vogelstein* removes '' the veil from the client's name when the attorney's assertion of a privilege is a cover for co-operation in wrongdoing '' (p. 219). As we view it, the surreptitious withholding of the petitioner's child by the anonymous clients and their failure so far to proceed with the proposed adoption proceeding wherein the petitioner could register her present objection to adoption and demand the return of her child might be a cloak for wrongdoing. In these circumstances, the law does not uphold '' the seal of secrecy on communications made '' by the clients as an aid to the accomplishment of a wrongful purpose and will not permit the attorney to be used as an instrument to subvert the ends of justice (*People ex rel. Vogelstein* v. *Warden of County Jail, supra,* p. 721). The possibility that the disclosure of the clients' identity will be harmful to them may, as at bar, where they are facing the prospect of subsequent litigation, '' not operate to extend the client-attorney privilege beyond the scope outlined by its history, its purpose and the principles underlying it '' (p. 720).

While the current statute, combining sections 353 and 353-a of the former Civil Practice Act, provides that an attorney shall not be required to disclose a confidential communication, made by his client '' in the course of professional employment '' (CPLR 4503, subd. [a]), it has been held that the address of a client who detained a child contrary to the court's decree in a divorce action is not privileged under this type of statute because it would aid the client in frustrating the court (*Falkenhainer* v. *Falkenhainer*, 198 Misc. 29, 31).

In addition, it may be noted that, while the appellant maintained that he never represented the petitioner and her parents and acted only for his anonymous clients, it is our view that actually the appellant represented both sides of the transaction in which he acted. At times when the petitioner had no attorney of her own, the appellant not only acted for his clients but he also prepared papers for the petitioner's signature and advised her of her right to appear and object in the proposed adoption proceedings. Under the circumstances, the veil of secrecy as to the appellant's clients is not available where the same attorney represented, as he did, both sides of the transaction (*Doheny* v. *Lacy*, 168 N. Y. 213, 224).

In our view of the law, if, as at bar, revealing the identity of erstwhile clients will help promote the disposition of later litigation, the attorney may not cloak the identity of his clients behind the claim of privilege, even if the clients have not

been served or do not appear in the subsequent case (*Matter of Malcolm,* 129 App. Div. 226, 227–228; *Schwarz* v. *Robinson* [*Kremer*], 129 App. Div. 404). The attorney may, in some instances, claim privilege as to the disclosure of the particulars concerning a former client's identity. Such privilege has been upheld where the prior action has proceeded to judgment (*Hyman* v. *Corgil Realty Co.,* 164 App. Div. 140, 141), or where in the current action the client may have an interest adverse to another party already represented by the attorney in a pending suit (*Neugass* v. *Terminal Cab Corp.,* 139 Misc. 699, 700), but those instances are not present at bar.

Apart from the foregoing, it is further to be noted that, absent a competent court decree creating new custodial rights, a mother's oral revocation of her signed consent to an adoption of her child is sufficient ground to spell out a cause of action for a custody proceeding in the Supreme Court (*People ex rel. Anonymous* v. *Anonymous,* 19 Misc 2d 441, 445). The mother may prevail if the nonparent initially obtained custody of the child with the mother's consent (*People ex rel. Kropp* v. *Shepsky,* 305 N. Y. 465).

Under all of the circumstances discussed, it is our view that the judgment under review should be affirmed, with costs.

BELDOCK, P. J., CHRIST, MUNDER and MARTUSCELLO, JJ., concur.

Judgment affirmed, with costs.