422 A.2d 510

**Linda BRENNAN**

v.

**David BRENNAN, Appellant.**

**Appeal of Theodore BREAULT, Esquire.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1979.

Filed Sept. 26, 1980.

Joseph J. Pass, Jr., Pittsburgh, for appellant.

Sanford M. Aderson, Pittsburgh, for appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, MONTGOMERY and HOFFMAN, JJ.

MONTGOMERY, Judge:

This appeal places in issue the propriety of a contempt Order against a Defendant's counsel in a custody case. The

Order resulted from counsel's refusal to disclose to the Court and to the Plaintiff the whereabouts of the Defendant and the children who are the subjects of the custody proceedings. We are called upon to examine the scope of the attorney–client privilege in these circumstances.

The record shows that on June 1, 1979, Plaintiff–Appellee Linda Brennan filed a Complaint against her husband, David Brennan, for custody of the two minor children of the parties, David Matthew Brennan, then 11 years of age, and Kelly Lynn Brennan, then 4 years of age. The Complaint alleges that the children resided in Allegheny County until May 27, 1979, when the father took the children and removed them from the jurisdiction, purportedly to reside in the State of Florida. Service of the Complaint in the case was made by Plaintiff by mailing a copy of the Complaint by certified mail, return receipt requested, as well as by ordinary mail, to the Defendant's last known residence.[1] The copy mailed by certified mail was returned unclaimed, but the copy sent by ordinary mail was not returned. Such service procedures satisfied Allegheny County Local Rule of Civil Procedure 1139.4, which provides:

RULE 1139.4 SERVICE.

(a) The complaint shall be served in any one of the following manners:

(1) In accordance with Pennsylvania Rules of Civil Procedure 1504; or

(2) By sending two copies of the complaint; one by certified mail, deliver to addressee only, return receipt requested and one by ordinary mail to the defendant's last known residential or business address;

(3) If service is not accomplished by certified mail as provided in paragraph (2) above, and there is no personal appearance by defendant, then service must be accomplished as in paragraph (1) above, or as may be authorized by the court. Service shall be presumed

---

1. That residence was at the same address as the residence of the Plaintiff, according to the allegations in the Complaint.

when certified mail is returned unclaimed and ordinary mail has not been returned.

(4) Where a person to be served resides outside the Commonwealth, service shall be made as above and in addition thereto may be made in any manner prescribed by the law of the place where service is made;

(5) When custody is sought, service shall also be made on all parents who are not a party to the action.

(b) No notice to defend or plead is required, and no responsive pleading is required.

On *June 22, 1979*, the Plaintiff filed a Petition to expedite the hearing date, which therefore had been set for October 11, 1979. She attached an affidavit to her Petition averring that the Defendant had advised her by telephone that he had received a copy of the Complaint. The lower court, on *June 22, 1979*, issued an Order setting a conciliation for July 2, 1979, directing both parties to appear, and directing the Defendant–Appellant to produce the children at the hearing. Subsequently, the Plaintiff, on July 5, 1979, filed an affidavit which, in pertinent part, declared that on *June 21, 1979*, she had advised the Defendant of the July 2, 1979 conciliation which had been ordered. Thus, the Appellee asserted by affidavit that she advised her husband of the conciliation date *before* her Petition for expedited hearing was even filed and the court set that date for the conciliation. Further, one Ethel Matthews, apparently the Plaintiff's mother, entered a second affidavit on record declaring that she had notified the Defendant of the conciliation on *June 20, 1979, two full days before* the Plaintiff's Petition was filed, and the conciliation date was fixed by the lower court.

The Defendant failed to appear or produce the children at the scheduled conciliation on July 2, 1979, and on that date the Court awarded temporary custody of the children to the Plaintiff. No further events concerning the case appear of record until October 11, 1979, when Attorney Theodore Breault, a member of the Allegheny County Bar, entered his appearance on behalf of the Defendant. At that time, Attorney Breault presented a Motion for Continuance on

behalf of the Defendant. In this Motion it was alleged that the Defendant only found out about the hearing by chance a few days earlier, had not been provided notice under the Uniform Child Custody Jurisdiction Act, and also alleged that there was a lack of *in personam* jurisdiction over Defendant.

At the October 11, 1979 hearing, the Plaintiff testified that the Defendant had received a copy of the original Complaint in the case which had been sent by ordinary mail, and further, that Defendant had acknowledged in several telephone conversations that he had received notice of the October 11, 1979 hearing date. During the hearing, Attorney Breault was asked by the Court to reveal the home address and telephone number of the father as well as the name and address of the school the children were attending. Mr. Breault refused to provide such information, asserting that his client had *specifically requested* that he not do so. Mr. Breault grounded his refusal on the attorney–client privilege. Breault did, however, provide a business address and telephone number for his client. Following the hearing, the lower court issued an order requiring Attorney Breault to disclose by October 15, 1979, the father's business address and telephone number, his home address and telephone number, and the name and address of the childrens' school. A hearing was set for October 15, 1979.

At the hearing on October 15, 1979, Attorney Breault continued his refusal to reveal the home address and telephone number of the Defendant or the identity or location of the school then attended by the children. He did, however, provide the same business address and telephone number which he had previously furnished. Following the hearing, the Plaintiff petitioned the Court to enter a Rule to Show Cause why Attorney Breault should not be held in contempt for his failure to comply with the Court's Order of October 11, 1979 for disclosure. The lower court made the rule returnable on October 19, 1979, at which time a hearing was scheduled.

On October 19 Attorney Breault appeared at the hearing and again respectfully refused to divulge the information demanded by the Court, again relying primarily upon the attorney–client privilege. Attorney Breault, then represented by his own counsel, waived any additional hearings that may have been procedurally required prior to the adjudication of contempt. The lower court then entered an Order finding Attorney Breault in civil contempt of court, and imposed the sanction of a $100 per day fine, for the benefit of the Plaintiff, said fine to be increased by $100 per day each succeeding week until the information concerning the Defendant and the children was revealed.

The lower court denied Attorney Breault's request for a supersedeas but on October 23, 1979, upon an appeal by Attorney Breault, this Court granted a supersedeas and simultaneously advanced the argument on this appeal in order to expedite review.

The specific issue presented by this appeal involves a question of first impression in the appellate courts in our Commonwealth.[2] We are called upon to decide whether as a general principle, the attorney–client privilege may prevent a court from compelling an attorney to disclose his client's address, when that client has specifically requested counsel to maintain confidentiality as to that information. Of

2. In the case of *In re Philadelphia & Reading Coal & Iron Co.*, 27 F.Supp. 256 (1939), the Federal District Court for the Eastern District of Pennsylvania held that an attorney could be compelled by the court to disclose the identities and addresses of clients. That case involved reorganization proceedings under the Federal Bankruptcy Act. The attorney involved had filed numerous motions and petitions which had resulted in complicated and lengthy proceedings. An attorney for the Securities and Exchange Commission sought to have the attorney in question disclose who he represented. In holding that the Court enjoyed the inherent power to compel the disclosure of such information, the District Court made no mention of the attorney–client privilege, and we can only assume that the privilege was never raised as an issue in the case. Thus, we cannot conclude that the case holds any precedential value in the context of the instant appeal.

The attorney–client privilege issue is present in another case now pending before this Court, where it was also sought that an attorney disclose, *inter alia*, the address of a client. See *Rupel v. Bluestein*, 280 Pa.Super. 65, 421 A.2d 406 (1979).

course we are also requested to determine, in particular, whether the facts of record in the instant case may qualify for the application of the general principle.

The attorney–client privilege, protecting the confidentiality of information passed by a client to his attorney, is well–established in our law. It has been recognized in our statutes and rules of conduct, as well as being a fundamental concept in our body of common law. The Act of July 9, 1976, P.L. 586, No. 142, § 2, eff. June 27, 1978, 42 Pa.C.S.A. § 5928, provides the statutory basis for the privilege. It states:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

This statute is substantially a reenactment of the Act of May 8, 1887, P.L. 158, No. 89, § 5(d), 28 P.S. § 321, which provided:

> Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client.

Commenting upon that section of the law, the Federal District Court for the Western District of Pennsylvania noted that the purpose underlying the law was to foster an open attorney–client dialogue. See *In re Westinghouse Electric Corp. Uranium Contracts Litigation*, 76 F.R.D. 47 (D.C.W.Pa.1977).

> The attorney–client privilege also finds support in the published rules of conduct governing those who practice law before the courts in our Commonwealth. The Pennsylvania Rules of Civil Procedure had originally adopted the American Bar Association Canons of Ethics as the standards of conduct for attorneys in our Commonwealth. Pa.R.C.P. 205, adopted September 8, 1938, effective March 20, 1939, 332 Pa. xlvi. The Canons, which had been

promulgated in 1908, were superceded by the Code of Professional Responsibility, adopted by the American Bar Association on August 12, 1969, and amended February 24, 1970. Our Pennsylvania Supreme Court adopted the Code (to replace the Canons) by Order dated May 20, 1970 and ordered that it be published in the same manner as our rules of court. See 438 Pa. XXV (1970). The Code was incorporated, in full, in Pa.R.C.P. 205, as amended February 27, 1974. See 455 Pa. lvii. As a result the Code of Professional Responsibility and its predecessor, the Canons of Professional Ethics, had the force of statutory rules of conduct in our Commonwealth. See *Slater v. Rimar,* 462 Pa. 138, 338 A.2d 584 (1975); *Schofield Discipline Case,* 362 Pa. 201, 66 A.2d 675 (1940). On June 28, 1976, the Supreme Court redesignated Rule 17 of the Supreme Court as the Pennsylvania Rules of Disciplinary Enforcement, to take effect 120 days thereafter, on October 27, 1976. See 464 Pa. LXXXIX *et seq.* Rule 102 of the Rules of Disciplinary Enforcement defined "Disciplinary Rules" as constituting the provisions of the Code of Professional Responsibility. See 464 Pa. XC, as well as the April 29, 1977 amendment thereto, at 469 Pa. XXVII. Rule 203 of the Rules of Disciplinary Enforcement requires persons subject to the Rules of Disciplinary Enforcement to obey the said "Disciplinary Rules", which are actually constituted by the Code. See 464 Pa. XCIII. As a result of the incorporation of the Code of Professional Responsibility into the Rules of Disciplinary Enforcement, Rule 205 of the Rules of Civil Procedure was rescinded as of October 27, 1976. See 465 Pa. XL; see also the Explanatory Note of the Supreme Court's Civil Procedural Rules Committee at 465 Pa. XLI.

Canon 4 of the Code of Professional Responsibility is of particular significance in the recognition of the attorney–client privilege, insofar as it may be applicable in this case. Canon 4 states: "A Lawyer Should Preserve the Confidences and Secrets of a Client." The Ethical Considerations which follow each Canon of the Code serve as practical guides in the understanding of the Canons. Eth-

ical Consideration 4–1 is deserving of attention in this appeal. It provides:

Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

Thus, in any analysis of the attorney–client privilege, we must recognize that our Code of Professional Responsibility provides strong support for the concept of a legally protected confidentiality for client–attorney discourse.

The privilege has also been firmly established in our common or decisional law. One noted authority has stated that the privileged nature of communications between an attorney and his client is the oldest testimonial privilege known to law. 8 Wigmore on Evidence § 2290 (3rd Ed. 1940). In an excellent Opinion in the case of *Cohen v. Jenkintown Cab Co.*, 238 Pa.Super. 456, 357 A.2d 689 (1976), Judge Cercone, now our President Judge, detailed the history of the privilege, as well as the rationale for its existence.[3] We do not deem it necessary to repeat an analysis of the history of the privilege in this Opinion in view of its recent explanation in the *Cohen* case, but we do note that we are mindful of its long–established place in our legal system.

**3.** Over the course of centuries, the rationale for the privilege has changed from time to time.

Our Supreme Court has also discussed the rationale for the rule of confidentiality in communications between an individual and his attorney. In *Slater v. Rimar, Inc., Supra,* the Supreme Court quoted with approval § 2297 of the Second Edition Of Mecham on Agency (Volume 2):

'The purposes and necessities of the relation between a client and his attorney require, in many cases, on the part of the client, the fullest and freest disclosures to the attorney of the client's objects, motives and acts. This disclosure is made in the strictest confidence, relying upon the attorney's honor and fidelity. To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance. Based upon considerations of public policy, therefore, the law wisely declares that all confidential communications and disclosures, made by a client to his legal adviser for the purpose of obtaining his professional aid or advice, shall be strictly privileged;–that the attorney shall not be permitted, without the consent of his client,–and much less will he be compelled–to reveal or disclose communications made to him under such circumstances.' 462 Pa. 148, 338 A.2d at 589.

The purpose for the privilege was also discussed more recently in *Estate of Kofsky,* 487 Pa. 473, 409 A.2d 1358 (1979). There the Court explained that the privilege is not concerned with prejudice, the ascertainment of the truth,[4] or

4. Other courts have commented differently on the importance of the search for truth in the consideration of rulings regarding attorney–client privilege. In *Fisher v. U.S.,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court recognized that the purpose of the privilege is to encourage the client to make a full disclosure to his lawyer and also noted that this desired result would not eventuate if the client realized his information might be more readily obtained from his lawyer than from the client himself. However, while the Supreme Court was cognizant of the importance of the privilege, it also stated that since the privilege has the effect of withholding relevant information for the factfinder, it should be applied only where necessary to achieve its purpose. Accordingly, the Supreme Court stated that the privilege protects only those disclosures neces-

the reliability of attorney–client communications, but only to foster a confidence between an advocate and his client that will lead to a trusting and open dialogue. See 409 A.2d at 1362. A recognition of this rationale by our Court is important in the consideration of any claim that an attorney should be compelled to disclose information which may be argued to be confidential.

Of course we must also be cognizant that the privilege is subject to limits and exceptions. For example, we have stated that the privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the court may require that the communication be disclosed. See *Cohen v. Jenkintown Cab Company, Supra*, 238 Pa.Super. at 464, 357 A.2d at 693–694. Also, it has been repeatedly held that when the advice of counsel is sought in the assistance of the commission of a continuation of criminal or fraudulent activity, the privilege of the protection is lost. See *Nadler v. Warner Company*, 321 Pa. 139, 184 A. 3 (1936); *Commonwealth v. Trolene*, 263 Pa.Super. 303, 397 A.2d 1200 (1979); *In re Westinghouse Electric Corp. Uranium Contracts Litigation, Supra.* However, in defense of the privilege, we must be mindful of the concept that the *party seeking disclosure has the burden of establishing a prima facie* case that the attorney was used to promote an intended or continuing fraudulent or criminal activity. See *Nadler v. Warner Company, Supra; In re Westinghouse Electric Corp. Uranium Contracts Litigation, Supra.* Moreover, in making the determination of whether the interests of justice may be frustrated by the exercise of the privilege, the court should *resolve all doubts in favor of non-disclosure*, so that a client should not be chagrined to learn that the confidences that he conveyed to his attorney have been revealed to his detriment and without his consent. *Cohen v. Jenkintown Cab Company, Supra.*

sary to obtain informed legal advice, which might not have been made absent the privilege.

In our analysis, we have to also recognize that not every item of information obtained by an attorney from a client may be considered to be qualified for the protection of the privilege. It has been held that the privilege applies to a communication, assuming it was conveyed in confidence to an attorney by a client in a client–attorney relationship, only when the communication relates to a fact of which the attorney was informed for the purpose of securing either a legal opinion, legal services, or assistance in some legal proceeding. Further, it may not have been communicated for the purpose of committing a crime or tort and the client must not have waived the privilege. See *Bird v. Penn Central Co.*, 61 F.R.D. 43 (D.C.E.Pa.1973); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 294 F.Supp. 1148 (D.C.E.Pa.1969).

With all of these concepts in mind, we turn to the specific issue presented by the case on appeal. As earlier noted, the general question of the propriety of a forced disclosure of the defendant husband's address from his lawyer appears to be a question of first impression on the appellate courts of our Commonwealth. However, similar situations have been presented to courts in other jurisdictions. The lower court in the instant case placed reliance upon the rationale of the Surrogate's Court of Bronx County, New York in its decision in *In the Matter of Jacqueline F.*, 94 Misc.2d 96, 404 N.Y. S.2d 790 (1978). In that case, an application was filed for a contempt order against a former guardian of an infant for failing to obey a court order revoking the guardianship and directing the return of the child to its natural parents. The guardian's attorney was directed to disclose his knowledge as to the address and whereabouts of his client. While such factual circumstances would seem to support the actions of the Allegheny County Court in the instant case, we find a more detailed analysis of the New York case to be appropriate.

The New York Court stated that as a general rule an attorney may be compelled to disclose the name and address of his client on the theory that his knowledge as to these

matters did not flow "... from a confidential communication." *In the Matter of Jacqueline F., Supra,* 404 N.Y.S.2d at 795. However, the court further explained that there was an *exception* to that general rule:

"An attorney may validly assert the privilege as to his client's name or address in the limited instance *where the client intended such information to be confidential* and further provided that protecting this cloak of secrecy will not aid in carrying out an unlawful purpose. *In the Matter of Jacqueline F., Supra,* 404 N.Y.S.2d at 795.

The Surrogate's Court found that the facts of that case did not fit within the bounds of the exception, for the guardian had exhausted all legal rights, the case was then complete, and the attorney's refusal to disclose the location of the client really aided in the continued evasion from compliance with the Court's order.

The New York Court's statement of the general rule, as well as the exception, appears to be correct. A comprehensive annotation in the Third Edition of the American Law Reports analyzes the views of courts in many jurisdictions regarding whether an attorney may be compelled to disclose a client's address. See 16 A.L.R.3d 1047, *et seq.* There it is stated that the address of a client is in many cases not privileged information simply because the attorney became aware of it as a collateral fact; however, it is well settled that where the client's address is communicated to the attorney in his *professional capacity*, the information is generally privileged. 16 A.L.R.3d at 1051.

Our own review of cases from other jurisdictions reveals a wide diversity of opinion regarding whether a client's address is entitled to the protection of the privilege. For instance, in *McDonald v. Berry*, 243 S.C. 453, 134 S.E.2d 392 (1964), the Supreme Court of South Carolina was presented with a situation wherein the attorney for adoptive parents in an action attacking an adoption decree had been ordered by the lower court to divulge the names and address of his clients. The Supreme Court held that the order was improper and noted the general rule that an address given confi-

dentially by a client to an attorney while consulting him in a professional capacity was a privileged communication. This general rule was followed in: *Re Heile*, 65 Ohio App. 45, 29 N.E.2d 175, 177 (1939) (where the matter was included in dictum, but the privilege as to a client's address was noted to exist even where the information was given merely with a view towards establishing an attorney–client relationship); *State v. Kirk*, 211 Kan. 165, 505 P.2d 619 (1973) (where the Supreme Court of Kansas cited 97 C.J.S. Witnesses, § 286 p. 812, for the general rule that an address given confidentially by a client to an attorney while consulting with him in a professional capacity is a privileged communication); *Jafarian–Kerman v. Jafarian–Kerman*, 424 S.W.2d 333 (Mo.App. 1968) (where the Court recognized the general rule that where the client give his concealed address to his attorney in confidence, the attorney would not be compelled to disclose it, except to prevent the furtherance of a crime of fraud).[5]

Finally, in *Ex parte Schneider*, 294 S.W. 736, 738 (Mo.App. 1927), the Court also stated the same general rule:

[A]n address, given by a client to an attorney while consulting him in a professional capacity on a business matter, for the purpose of enabling the attorney to communicate with the client in respect thereto, is a privileged communication. (Citing authority.) If the client's residence has been concealed (as here), or if the client is in hiding for some reason or other, and the attorney knows his address only because the client has communicated it to him confidentially as his attorney for the purpose of being advised by him, and has not communicated it to the rest of the world, then the client's address is a matter of profes-

5. In the *Jafarian–Kerman* case, *Supra*, the Court found that the client, a defendant in a custody case, had himself used the court to seek custody of his child when he sought and obtained an order granting him limited custody of the child pending the completion of divorce proceedings. After *gaining custody of the child under such proceedings,* he left the United States surreptitiously with the child, contrary to the Order of the Court. The court held that the privilege as to the address could not be maintained in view of the brazen violation of the Court's orders.

sional confidence, which the attorney may not be required to disclose.

In view of the firm establishment of the privilege in the statutes, Code of Professional Responsibility, and decisional law of our Commonwealth, and in light of the prevailing general rule of privilege as to client's addresses in other jurisdictions, we find that Attorney Breault's reliance upon the attorney–client privilege was appropriate in this case. He asserted that when his client furnished his address, he asked Attorney Breault to keep the information confidential. In these circumstances, the prevailing rule would hold such information to be privileged, unless the exercise of the privilege either operates to permit or continue a crime or fraud or is clearly shown to be frustrating the administration of justice. As noted earlier, under Pennsylvania law, it is *the party seeking to overcome the privilege* who has the burden of establishing a *prima facie* case that the party asserting the privilege is committing a crime or fraud or continuing the same in exercising the privilege, or that the interest of justice is frustrated by the exercise of the privilege.

On the basis of the record before us, we cannot conclude that the Plaintiff wife has met her burden in either regard. The lower court did not receive any reliable testimony or evidence to indicate a crime or fraud, and made no finding that the same had been proved. Nor can we find clear evidence, on the record before us, that it has been demonstrated beyond doubt that the interests of justice have been frustrated, so as to preclude the exercise of the privilege. The court merely held that it had the power to compel the attorney to disclose his client's whereabouts, under the holding of the New York court in *In re Jacqueline F., Supra.*

The lower court characterized this case as one of child–snatching by the Defendant. On the record before us, we cannot agree that such a situation is evident. While the Court ordered the Defendant father to produce the children for the conciliation in July, 1979, the affidavits submitted by Plaintiff create more *doubt* than assurance that the Defend-

ant was ever served with notice of the July 2, 1979 conciliation. There is *no* evidence in the record to indicate that he was served with notice of the Court's Order of July 2, 1979, awarding temporary custody to the Plaintiff. The lower court has *not ruled* on his motion contesting jurisdiction. On this record we cannot find that his custody of his children is in violation of *any proper* custody order. In short, we find the present record insufficient to support the Plaintiff's burden of showing either a crime or fraud, or a clear breach of the interests of justice sufficient to overcome the privilege advanced by defense counsel regarding his client's address, or to support the finding of contempt by the lower court.

The Order of the lower court adjudging Attorney Breault in contempt must be reversed, and the case remanded to the lower court for further proceedings. Upon remand, the lower court will, *inter alia* have to address the merits of the purported Motion for Continuance filed by the Defendant. While captioned as a Motion for Continuance, we note that the document includes factual averments verified by an affidavit filed by Attorney Breault, and also contains a challenge to the court's *in personam* jurisdiction. It appears anomalous that the Defendant contests *in personam* jurisdiction, yet refuses to permit his counsel to disclose his correct current address. In further proceedings, after issues concerning jurisdiction are resolved, the Plaintiff may desire to present evidence to attempt to establish that a crime or fraud is being advanced by the exercise of the privilege by the defense as to Attorney Breault's knowledge of Defendant's address. Further, Plaintiff may attempt to demonstrate that the interests of justice have clearly been frustrated by the exercise of the attorney–client privilege in this case, in order to overcome the rule favoring non–disclosure. Moreover, the lower court may deem it appropriate to appoint separate counsel for the children in this case. See *Lewis v. Lewis*, 271 Pa.Super. 519, 414 A.2d 375 (1979). Of course, any resolution of such matters would not be appropriate by this Court in the context of the instant appeal.

We merely hold that the contempt finding and resultant Order, involving defense counsel's refusal to disclose his client's address, were in error.

Reversed and remanded for further proceedings consistent with this opinion.

HOFFMAN, J., files a concurring opinion in which SPAETH, J., joins.

PRICE, J., files a dissenting opinion.

HOFFMAN, Judge, concurring:

Although joining in the majority opinion, I believe it appropriate to comment further on the specific nature of the attorney–client privilege. That privilege represents a time-tested accommodation between the client's welfare and interest and the effective administration of justice. The comment to Rule 1.7 of the proposed ABA Model Rules of Professional Conduct illustrates the nature of this accommodation:

> Defining the scope of the duty to disclose a client's confidences is most difficult. On the one hand, the client expects that matters imparted to a lawyer will be kept confidential. On the other hand, in becoming privy to client confidences a lawyer may foresee that the client intends serious and perhaps irreparable harm to another person. To the extent a lawyer is prohibited from making disclosure, the interests of the potential victim are sacrificed in favor of preserving the client's confidences even though the client's purpose is wrongful. However, to the extent a lawyer is required to disclose a client's purposes, the client may be inhibited from revealing facts which would enable the lawyer to counsel against a wrongful course of action. Any rule governing disclosure of threatened harm involves balancing the interests of one group of potential victims against those of another. On the assumption that lawyers generally fulfill their duty to advise against the commission of a deliberately wrongful act, the public is better protected if full disclosure by the client is encouraged than if it is inhibited.

As that comment indicates, courts must be mindful that limitations on the privilege may result in a client's reluctance to disclose relevant information to his attorney. Nevertheless, courts must balance the interests of the client against the potential harm to others. This is particularly so in a child custody case where the child's best interests are of paramount importance. Consequently, if the party seeking to overcome the privilege establishes that the child's interests require disclosure of the information which the client asserts is privileged, the privilege must yield.

Because the present record is insufficient to permit us to make that determination, I agree with the majority's decision to remand the case for further proceedings.

SPAETH, J., joins in this opinion.

PRICE, Judge, dissenting:

While I agree with the majority that the sanctity of the attorney–client relationship should be zealously protected, I disagree that disclosure in the instant case would upset the policy underlying the rule of confidentiality and conclude that non–disclosure would have the effect of frustrating the administration of justice.

Preliminarily, I must take issue with the majority's statement that there is a "prevailing general rule of privilege as to client's addresses in other jurisdictions . . . ." (at 516). To the contrary, the general rule is that the address of a client is in most instances irrelevant to the purpose for which the attorney was retained and is deemed collateral to the substantive issues raised in the litigation. *See* 8 Wigmore, Evidence § 2310 (McNaughton rev. 1961) (information must be "part of the purpose of the client" in obtaining legal advice). Thus, it is generally held that such information "did not flow from a confidential communication." *In re Jacqueline F.*, 94 Misc.2d 96, 103, 404 N.Y.S.2d 790, 795 (1978), *aff'd*, 47 N.Y.2d 215, 391 N.E.2d 967, 417 N.Y.S.2d 884 (1979). As such, the customary rule is that a party must be apprised of the address of his adversary in any legal proceeding. *See* cases collected at Annots. 114 A.L.R. 1321, 1328–33 (1938) and 16 A.L.R.3d 1047, 1062–68 (1967).

As the majority correctly notes, however, such information may be held confidential if the client expressly requested that it remain inviolate and would not have revealed the information but for the assurance of confidentiality. The rationale for this subjective test, see *Alexander v. Queen*, 253 Pa. 195, 94 A. 1063 (1916); 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961); Disciplinary Rule 4–101; American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion 155 (1936). Informal Opinion 1188 (1971), is to implement the underlying policy of the attorney–client rule of confidentiality, which is to encourage litigants to seek professional advice under an assurance that they may truthfully divulge all information to their legal adviser subject to the cloak of confidentiality. *See, e. g., Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Cohen v. Jenkintown Cab Co.*, 238 Pa.Super. 456, 357 A.2d 689 (1976). But even this subjective test has its limitations, and I submit that disclosure in the instant case would not violate the policy underlying the rule of confidentiality. As stated in *Dike v. Dike*, 75 Wash.2d 1, 11, 448 P.2d 490, 496 (1968):

"As the privilege may result in the exclusion of evidence which is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege cannot be treated as absolute; but rather, must be strictly limited to the purpose for which it exists."

*See In re Jacqueline F.*, 47 N.Y.2d 215, 391 N.E.2d 967, 417 N.Y.S.2d 884 (1979).

In any custody dispute, a party seriously and honestly intending to adjudicate the pertinent issues on their merits according to well–founded legal precepts will not be remiss to divulge the location of himself and the children and the name and address of the school that the children attend. Certain of this information is required under the Uniform Child Custody Jurisdiction Act, Act of June 30, 1977, P.L. 29, § 10, 11 P.S. § 2310 (Supp. 1979–80) and is vitally necessary to permit the court to resolve the ultimate issue as to the

best interests of the children. Moreover, even the majority acknowledges that the position adopted by appellant "appears anomalous" in that he has instructed his counsel to contest the "*in personam* jurisdiction [of the Allegheny County Court of Common Pleas], yet refuses to permit his counsel to disclose his correct current address." (at 517). In essence, appellant wishes to retain custody on his own terms and to utilize the existing judicial machinery to accomplish his purpose of challenging the *in personam* jurisdiction of the court, yet refuses to cooperate by divulging relevant information that would permit the court to fulfill its proper function in this custody case. By submitting his appearance to the hearing court [1] to invoke its process to dismiss the suit for lack of jurisdiction, appellant became bound to supply to the court information for that determination and the ultimate determination as to the best interests of the child should *in personam* jurisdiction be established. Thus, although the information here in question would appear to satisfy the test of confidentiality as a result of appellant's self–serving statement that it remain sacrosanct, I would hold that disclosure would not upset the policy behind the confidentiality rule and would not have the effect of discouraging *serious* litigants from retaining legal counsel and truthfully disclosing all information necessary for rendering proper legal service.

Finally, I disagree with the majority's determination that the instant proceeding does not establish a clear showing that the administration of justice will be impeded by the withholding of this vital information. Indeed, as I read the opinion, the majority merely concludes that because of the absence of a "proper custody order" (at 516), the present

1. In his brief submitted to this court, appellant characterizes the October 11, 1979 Motion for Continuance as a "special appearance" for the purpose of contesting *in personam* jurisdiction. We note, however, that special appearances have been abolished in this Commonwealth, *see Monaco v. Montgomery Cab Co.*, 417 Pa. 135, 208 A.2d 252 (1965), and the only method for challenging jurisdiction is by way of preliminary objections filed within twenty days subsequent to service of the complaint, a procedure that appellant failed to utilize. *See* Pa.R.C.P. Nos. 1017(b), 1026.

case is not sufficiently "ripe" to establish the frustration in the administration of justice, but that upon remand the continued exercise of the attorney–client privilege may have that effect. In this respect, it should be noted that the complaint in custody was filed over one year ago on June 1, 1979, and averred that the children had been removed from the partys' joint custody by appellant. An initial hearing on the complaint was scheduled for October 11, 1979, but upon petition by appellee, an expedited conciliation hearing was set for July 2, 1979, during which an order was entered awarding temporary custody to her. While a question does exist whether appellant received actual notice of the July 2, 1979 conciliation, the hearing court apparently determined that notice had been given and its order emanating from that hearing remained in effect until it was adjudicated to have been entered in error. See Act of June 30, 1977, *supra*, § 13, 11 P.S. § 2313. While the majority engages in *de novo* speculation that notice was not given and that the temporary custody order of July 2, 1979, is without effect, I believe that we should not delay our ruling in light of appellant's avowed intent to retain custody and not reveal the information to the court. Moreover, and perhaps most importantly, it should be noted that the hearing court declined to enter a supplemental "proper"[2] custody order at the October 11, 1979 hearing only because it felt that the prior order of July 2 remained in effect and would not be enhanced an additional order. Thus, over one year subsequent to the filing of the initial complaint, appellant continues to thwart the process of the court by refusing to provide information pertinent to its adjudication of the issues of *in personam* jurisdiction and the best interests of the children.

Therefore, I would hold that in its present posture this proceeding is ripe for determination that, through his actions, appellant has succeeded in frustrating the interest of justice, and thus the information is not subject to the rule of

2. The hearing court found that service of the complaint and notice of the October 11, 1979 custody hearing were given to appellant in accordance with Allegheny County Local Rule 1139.4, and thus any order entered at that hearing would have been "proper."

confidentiality of attorney–client communications. Indeed, courts in other jurisdictions have expressly or implicitly concluded that in custody disputes, the withholding of the information here in question serves to frustrate the administration of justice and is not privileged information. *See Jafarian–Kerman v. Jafarian–Kerman*, 424 S.W.2d 333 (Mo. App.1968); *In re Jacqueline F., supra; Falkenhainer v. Falkenhainer*, 198 Misc. 29, 97 N.Y.S.2d 467 (1950); *Dike v. Dike, supra; cf. Ex parte Schneider*, 294 S.W. 736 (Mo.App. 1927) (dicta); *Tierney v. Flower*, 32 App.Div.2d 392, 302 N.Y.S.2d 640 (1969) (adoption case).

In their opinion, the majority seeks to distinguish the principal case relied upon by the hearing court, *In re Jacqueline F., supra*, in part by noting that therein the custody proceeding had run its course and a final custody decree had been entered. Thus, when the attorney refused to divulge the whereabouts of his client, the administration of justice was frustrated because the refusal prevented the enforcement of the final decree. The majority draws a distinction by concluding that no such result would obtain in the instant case because a final adjudication has not been entered. Unfortunately, by engaging in speculation the majority undercuts the efficacy of the July 2, 1979 temporary custody order and permits appellant to continue to impede the hearing court in its avowed purpose of awarding temporary custody to appellee. More important, however, is the implied ruling of the majority that the administration of justice will be thwarted only when there is a final decree of custody, but not when the information is withheld during the proceeding to determine custody, precisely the point when such information will be necessary to the court in formulating a decree to effectuate the best interests of the children. In fact, at least one court has held that the current pendency of the proceeding is an important factor in determining that the information is vital to the administration of justice. *See Dike v. Dike, supra, relying upon, In re Schneider, supra; cf. Tierney v. Flower, supra* (adoption case).

Accordingly, I would hold that by his actions appellant has impeded the administration of justice and that disclosure in the instant case would not violate the policy underlying the attorney–client rule of confidentiality. The order of October 19, 1979, should be affirmed.