J-S31041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMIEN HARTSFIELD | : | |
| | : | |
| Appellant | : | No. 1628 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001345-2022

BEFORE: PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED OCTOBER 22, 2025**

Appellant Damien Hartsfield appeals from the judgment of sentence imposed following a non-jury trial in which he was convicted of theft by deception, forgery, identity theft, perjury, false swearing, conspiracy to commit theft by deception, conspiracy to commit forgery, and conspiracy to commit identity theft.[1] Appellant claims that the motions court erred in allowing his former attorney to testify and that the trial court erred by admitting an exhibit without proper authentication. After review, we affirm.

The trial court set forth the factual history of the case as follows:

On December 18, 2020, Appellant received a notification via email from his attorney, Daniel Linn, Esq. [(Former Counsel)], that settlement funds, from a separate civil case, in the amount of $10,000 were received and placed into a client trust account. [Former Counsel] informed Appellant that the funds could not be

---

[1] 18 Pa.C.S. §§ 3922(a)(1), 4101(a)(2), 4120(a), 4902(a), 4903(a)(1), and 903(a), respectively.

distributed without a court order releasing child support arrearages. Appellant owed approximately $17,000 in arears.

On December 23, 2020, Appellant contacted Laeah Brown (hereinafter "Complainant") and requested to be taken off child support so that he could use his passport. Complainant refused to release child support arrears owed by Appellant at that time. The same day, December 23, 2020, Appellant contacted [Former Counsel's] office and requested to have the settlement funds placed under his current wife's name. [Former Counsel's] employee, Nancy Cellini, informed Appellant that the funds could not be placed under another person's name without a court order. On December 29, 2020, Appellant called [Former Counsel] and requested that a letter be sent on behalf of Complainant, the mother of Appellant's children and to whom the child support payments were owed, asking for a release from child support arrears. [Former Counsel] refused to send a letter and provided the contact information for Paula Musi[, Esq.], an attorney in the Child Support Unit of the Philadelphia District Attorney's Office, who could assist in obtaining a court order to release the child support arrears.

On January 12, 2021, Appellant contacted [Former Counsel] because he was in receipt of an allegedly notarized letter signed by Complainant which released the child support arrears. Appellant then sent [Former Counsel] an email containing a copy of the notarized release letter from Complainant and a copy of [Complainant's] driver['s] license. [Former Counsel] forwarded the notarized letter and license to Paula Musi via email and asked if Appellant's funds could be released. Appellant contacted [Former Counsel] a second time on January 12, 2021 and requested that the notarized letter be faxed to "child support." On January 13, 2021, [Former Counsel] faxed the notarized letter to the Philadelphia District Attorney's Office and again asked if Appellant's settlement funds could be disbursed. Later the same day, January 13, 2021, [Former Counsel] received an order executed by the Honorable Margaret Murphy in the Court of Common Pleas, Philadelphia County, Domestic Relations Division [(Family Court)] which vacated Appellant's non-disbursement order. [Former Counsel] contacted Appellant and arranged the release of the Appellant's settlement funds.

Following the release of the child support arrearages, Complainant received a confirmation letter from Philadelphia Family Court in January 2021. Complainant did not know why she received the

- 2 -

letter and called Appellant for clarification. Appellant responded that he only called child support and requested to be taken off. Complainant then contacted the Child Support Unit at the Philadelphia District Attorney's Office and was provided a copy of the letter which released the child support arrearages. Complainant did not recognize the letter and did not authorize any third party to execute the document on her behalf. Additionally, Complainant noticed that her name was spelled incorrectly and she did not recognize the telephone number listed. Complainant called the number and identified the owner of the number as someone who was not a friend or family member. Complainant then contacted [Former Counsel] regarding the release letter which she believed to be forged. [Former Counsel] contacted the Philadelphia District Attorney's Office via email to inform them that there were questions raised regarding the authenticity of the letter releasing Appellant from [child support] arrearages. [Former Counsel] also contacted Appellant and asked if the letter was fraudulent. Appellant denied that any fraudulent activity occurred but did not deny that he sent the letter.

On March 10th, 2021, Appellant and Complainant attended a contempt hearing in Philadelphia [Family Court] before the Honorable Joel Johnson regarding the improperly vacated court order for child support and forged notarized release letter. The hearing was conducted over a RingCentral conference call. During the contempt hearing, Appellant denied providing or seeing the forged notarized release letter sent to [Former Counsel]. Appellant denied taking a vacation or traveling to Cancun, Mexico after January 13, 2021. On February 26, 2021 Appellant's passport was stamped for Quintana Roo, Mexico. Additionally, Appellant stated that the settlement money was in his bank account and that $500.00 was sent to his children each month totaling about $3,000.00. Complainant denied receiving any payment for her children aside from a toy purchased by Appellant for a value of less than $3,000.00.

On February 8, 2022, Appellant was apprehended by police at [a gate] in the Philadelphia International Airport.

Trial Ct. Op., 12/18/24, at 1-4 (citations omitted and some formatting altered).

- 3 -

On March 21, 2023, the Commonwealth filed a motion *in limine* seeking to compel Former Counsel to testify at Appellant's trial. A hearing regarding the motion was held on July 24, 2023 before the Honorable Anthony Kyriakakis (motions court). Ultimately, after Former Counsel testified at the hearing, the motions court granted the Commonwealth's motion to compel.

On January 23, 2024, Appellant, having waived his right to a jury trial, proceeded to a waiver trial before the Honorable Tamika N. Washington (trial court). Thereafter, the trial court found him guilty of the above-stated charges. Appellant was sentenced on May 28, 2024 to three to six years' incarceration for theft by deception, three to six years' incarceration for forgery, and three years of probation for identity theft.[2] The trial court imposed the sentences for theft by deception and forgery consecutive to each other for an aggerate sentence of six to twelve years' incarceration followed by three years of probation.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Rule 1925.[3]

_____

[2] The trial court sentenced Appellant to no further penalty for conspiracy to commit theft by deception, perjury, false swearing, conspiracy to commit forgery, and conspiracy to commit identity theft.

[3] On June 6, 2024, the trial court issued an order directing Appellant to file a Pa.R.A.P 1925(b) statement within twenty-one days of the entry of the order. Trial counsel motioned to withdraw as counsel on June 11, 2024 stating that he was only retained for trial and that Appellant could not retain his services for appeal, but wished to have counsel appointed. The trial court granted trial counsel's motion on June 26, 2024, and ordered the appointment of appellate
*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

1. Did the motions court err in granting the Commonwealth's motion *in limine* via written order dated July 24, 2023 to compel the testimony of [Former Counsel]?

2. Did the trial court err in admitting, over objection, the non-disbursement order designated as Exhibit "C-3"?

Appellant Brief at 6 (some formatting altered).

**Attorney-Client Privilege and the Crime-Fraud Exception**

Appellant's first claim is that the motions court erred in granting the Commonwealth's motion *in limine*, in which it sought to compel the testimony of Former Counsel. ***See*** Appellant's Brief at 9-15. Appellant argues that the motions court erred by compelling Former Counsel to testify pursuant to the crime-fraud exception of the attorney-client privilege. ***See id.*** at 10-11. Specifically, Appellant argues that the order compelling Former Counsel to testify was not restricted in scope. ***Id.*** Appellant concludes that, because the order compelling Former Counsel to testify was not limited in scope, Former Counsel was allowed to testify "to all communications between [Appellant] and himself" and that "[t]his wholesale waiver contradicts the attorney-client privilege and Pennsylvania law and rises to the level of reversible error." ***Id.*** at 15.

_____

counsel for Appellant's direct appeal. Appellate counsel entered his appearance on August 20, 2024. On September 8, 2024, appellate counsel filed a motion for the extension of time to file a Rule 1925(b) statement *nunc pro tunc*. After the trial court granted an extension, Appellant filed a timely Rule 1925(b) statement *nunc pro tunc*.

"Whether the attorney-client privilege . . . protects a communication from disclosure is a question of law." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014) (citations omitted). Since this issue presents a question of law, our standard of review is *de novo*, and our scope of review is plenary. *See id.*

The attorney-client privilege in criminal matters is codified and states the following:

> In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S. § 5916.

However, "a lawyer's fidelity to the client does not extend to aiding and abetting a client in criminal activities, . . . nor can the client have a legitimate expectation of such confidences." *Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d at 218 (citation and quotation marks omitted). The attorney client privilege "does not protect communications made for the purpose or in the course of the commission of proposed crime or fraud." *In re Investigating Grand Jury of Philadelphia County*, 593 A.2d 402, 406 (Pa. 1991). The rationale behind this lack of protection is well established:

> No court can permit it to be said that the contriving of a fraud can form part of the professional occupation of an attorney or solicitor. In order [for the attorney-client privilege to] apply there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communications with his solicitor one of these elements must necessarily be absent.

The client must either conspire with his solicitor or deceive him. If his criminal object is avowed, the client does not consult his adviser professionally, because it cannot be the solicitor's business to further any criminal object. If the client does not avow his object he reposes no confidence, for the state of facts, which is the foundation of the supposed confidence, does not exist. The solicitor's advice is obtained by a fraud. Such communications were not made to the attorney in his professional capacity, as they were such as he could not receive in such capacity, and therefore were not privileged.

*Nadler v. Warner Co.*, 184 A. 3, 5 (Pa. 1936) (citations and quotation marks omitted).

Further, "[w]hen the advice of counsel is sought in aid of the commission of crime or fraud, the communications are not 'confidential' within the meaning of the statute, and may be elicited from the client or the attorney on the witness stand." *Id.* Ultimately, "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law [and] must let the truth be told." *Id.* (citations omitted).

When seeking to disclose that which may be privileged, "the party seeking disclosure has the burden of establishing a prima facie case that the attorney was used to promote an intended or continuing fraudulent or criminal activity." *Brennan v. Brennan*, 422 A.2d 510, 515 (Pa. Super. 1980) (citations omitted).

Here, the trial court addressed Appellant's claim as follows:

[Former Counsel] provided uncontroverted testimony that he suspected that [] Appellant involved him in a fraudulent scheme. [Former Counsel] unknowingly assisted Appellant in sending a fraudulent letter to the Philadelphia District Attorney's Office and Philadelphia [Family Court] in order to have a non-disbursement order vacated. [Former Counsel] learned of potential fraud from

> Complainant and contacted Appellant to see if the letter releasing the ar[r]ears was fraudulently obtained. [Former Counsel] then contacted Paula Musi in the Child Support Unit of the Philadelphia District Attorney's Office due to suspected fraud. [Former Counsel's] testimony demonstrates that attorney-client privilege does not apply because the correspondence with Appellant involved a criminal act. [Former Counsel's] discussions with Appellant fall under the crime fraud exception.

Trial Ct. Op. at 10 (citations omitted).

After review, we agree with the trial court that Appellant's communications with Former Counsel were not covered by attorney-client privilege. At the hearing on the Commonwealth's motion to compel his testimony, Former Counsel testified that he represented Appellant in a civil matter in which he negotiated a $10,000 settlement in Appellant's favor. N.T. Mot. Hr'g, 7/24/23, at 9. Former Counsel stated that he could not disburse the funds to Appellant due to a non-disbursement order related to Appellant's child support arrearages. *Id.* Former Counsel stated that he explained the effect of the non-disbursement order to Appellant. *Id.* at 9-10. Former Counsel also testified that in December of 2020, Appellant contacted him and stated that he had a letter from the mother of his children releasing him from the arrearages. *Id.* at 11-12. Former Counsel told Appellant to submit the letter to the Child Support Unit of the Philadelphia District Attorney's Office as Former Counsel could not release any funds to Appellant until he received authorization and a court order allowing him to do so. *See id.* at 13. Former Counsel testified that Appellant later asked him to send the letter and Former Counsel advised Appellant to forward the letter himself but Former Counsel

also agreed to send a courtesy copy. *Id.* Appellant emailed the letter to Former Counsel, who sent it to the proper contact at the Child Support Unit to obtain an order allowing Former Counsel to disburse the settlement funds. *See id.* at 14. Thereafter, Former Counsel received an order allowing him to disburse the funds to Appellant. *Id.*

Former Counsel explained that he was then contacted by Complainant. *Id.* at 15. After speaking to Complainant, Former Counsel called Appellant to discuss Complainant's contention that she did not authorize the release of the arrearages. *Id.* at 15-16. Appellant denied any wrongdoing. *Id.* at 16. Former Counsel contacted the Child Support Unit to advise them about the discrepancy regarding the letter. *Id.* at 16-17.

Based upon the above testimony, we conclude that the Commonwealth satisfied its burden of establishing a *prima facie* case that Former Counsel was used to promote an intended fraudulent or criminal activity. *See Brennan*, 422 A.2d at 515. Since Appellant utilized Former Counsel to further fraudulent or criminal activity, "the communications are not 'confidential' within the meaning of the statute, and may be elicited from the client or the attorney on the witness stand." *See Nadler*, 184 A. at 5; *see also Investigating Grand Jury of Philadelphia County*, 593 A.2d at 406; *Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d at 218. Accordingly, the motions court did not err in granting the Commonwealth's motion to compel Former Counsel's testimony. *See Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d at 215.

As to Appellant's argument that the order compelling Former Counsel to testify was required to be limited in scope, Appellant failed to make this argument in the motions or trial court. At the motions hearing, Appellant argued that the evidence presented was insufficient to show that he sent the letter to Former Counsel and that Former Counsel's action of notifying the Child Support Unit about the discrepancy of the letter was improper. *See* N.T. Mot. Hr'g, 7/24/23, at 35-39. Appellant did not file a response to the Commonwealth's motion to compel. *See id.* at 41. Further, at trial, Appellant never raised an objection regarding Former Counsel's testimony going beyond the scope of the crime-fraud exception. *See* N.T., 1/24/24, at 9-45. Since this argument was never raised in the trial court, it is waived for our review. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also* ***Commonwealth v. Murray***, 83 A.3d 137, 158-59 (Pa. 2013) (holding that the defendant waived his claim regarding attorney-client privilege by failing to raise it in the trial court and stating "that preservation of the specific argument in support of the ground for reversal is required for appellate review" (citation omitted)). For these reasons, Appellant is not entitled to relief.

### Authentication of the Non-Disbursement Order

Appellant's next claim is that the trial court erred by admitting the non-disbursement order without proper authentication. *See* Appellant's Brief at 15-20. Specifically, Appellant argues that "[w]hile the non-disbursement

- 10 -

order was issued by the Administrative Judge of Family Court, the [Commonwealth] attempted to admit a copy through the [assistant] district attorney's testimony." *Id.* at 15-16. Appellant claims that the assistant district attorney who authenticated the document was not qualified to do so and that "the appropriate individual to authenticate such a document would be the clerk or prothonotary." *Id.* at 18. Appellant argues that a custodian of records was required to testify before admitting the order and, specifically, the custodian of records for Family Court and not an assistant district attorney. *See id.* at 19. Finally, Appellant contends that the admission of the disbursement letter was not harmless error as "it as a key piece of evidence to demonstrate why [Appellant] engaged in the alleged forgery." *Id.* at 19-20.

> Our standard of review for evidentiary issues is as follows:
>
> We review a challenge to the trial court's evidentiary rulings for an abuse of discretion. . . . The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary. Further, we will affirm a trial court's evidentiary ruling if the result is correct on any ground, without regard to the grounds on which the trial court relied.

*Commonwealth v. Williamson*, 330 A.3d 407, 414 (Pa. Super. 2025) (citations omitted and some formatting changed), *appeal denied*, --- A.3d --, 79 MAL 2025, 2025 WL 2217650 (Pa. filed Aug. 5, 2025).

Generally, authentication of evidence requires a low burden of proof. *See Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa. Super. 2022). "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a).

Public records "may be self-authenticating as provided in Pa.R.E. 902" or "may be authenticated in the same manner as other writings." Pa.R.E. 901, cmt. Under Rule 901, a public record may be authenticated by evidence showing that "a document was recorded or filed in a public office as authorized by law" or "a purported public record or statement is from the office where items of this kind are kept." Pa.R.E. 901(b)(7). Under Rule 902, certified copies of public records that were recorded or filed in a public office are self-authenticating "if the copy is certified as correct by . . . the custodian or another person authorized to make the certification or . . . a certificate that complies with Rule 902(1), (2), or (3), a statute or a rule prescribed by the Supreme Court." Pa.R.E. 902(4) (some formatting altered).

Here, the trial court concluded that the non-disbursement order was admissible pursuant to Pa.R.E. 803(6)(d). *See* Trial Ct. Op. at 11-13. However, Rule 803 sets forth the exceptions to the rule against hearsay and

does not deal with the **authentication** of documents.[4] *See* Pa.R.E. 803. Accordingly, the trial court's rationale is erroneous. However, we are not bound by the trial court's rationale if the admission is supported on other grounds. *See Williamson*, 330 A.3d at 414.

Here, our review of the record demonstrates that the non-disbursement order was properly authenticated under Rule 901. At trial, the Commonwealth did not claim that the order was a certified copy. *See* N.T., 1/23/24, at 51. The Commonwealth called Assistant District Attorney Joan Esmonde, Esq. to authenticate the non-disbursement order. *Id.* at 46-50. ADA Esmonde identified the non-disbursement order as "our form, non-disbursement order, . . . that we send to counsel directing them not to distribute any money to the defendant in [a] child support case" and identified the specific document as the order related to Appellant's child support case. *Id.* at 49-50. ADA Esmonde testified that her unit at the district attorney's office, as part of a court-approved administrative enforcement mechanism, generates non-disbursement orders, keeps record of the orders, and dockets the orders in the Family Court record. *Id.* at 53-55. ADA Esmonde testified that she was the person that wrote the non-disbursement order in Appellant's case. *Id.* at 54. Based upon this testimony, the non-disbursement order was properly

---

[4] We note that Appellant did not preserve a challenge to the admission of the non-disbursement order based upon hearsay. *See* N.T., 1/23/24, at 50 (objecting and stating "I don't think that this testimony is appropriate to authenticate the court document"); N.T., 1/24/24, at 5-7 (explaining that "while [the order] may be a business record, that's not my argument").

authenticated under Rule 901(b)(7) as the Commonwealth introduced sufficient evidence to show that the order was "recorded or filed in a public office as authorized by law" and that the order was "from the office where items of this kind are kept."[5]  **See** Pa.R.E. 901(b)(7).  Since the non-disbursement order was properly authenticated under Rule 901, we affirm the trial court's ruling on that basis.[6]  **See Williamson**, 330 A.3d at 414.  Since the non-disbursement order was properly authenticated, no relief is due.  Accordingly, we affirm.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/22/2025

_____

[5] The test under Rule 901(b)(7) is disjunctive and, therefore, the Commonwealth was only required to prove one of these two elements to authenticate the order.  **See** Pa.R.E. 901(b)(7).

[6] To the extent Appellant relies on **Commonwealth v. Manivannan**, 186 A.3d 472 (Pa. Super. 2018), to argue that a record custodian from family court was required to authenticate the order, we note that **Manivannan** dealt with the requirements of self-authenticating evidence under Pa.R.E. 902.  **See Manivannan**, 186 A.3d at 480-81.  Rule 902 is not the only way to authenticate a public record as, like here, public records may also be authenticated under Rule 901.  **See** Pa.R.E. 901, cmt. (stating that, in addition to being self-authenticating under Rule 902, public records may be authenticated under Rule 901).